IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

```
_____
                              :
EDWIN BAEZ,                   :   CIVIL ACTION
            Petitioner,       :
                              :
                              :
     v.                       :   NO. 06-5629
                              :
SUPERINTENDENT GRACE, et al., :
            Respondents,      :
_____:
```

HENRY S. PERKIN
UNITED STATES MAGISTRATE JUDGE

## REPORT AND RECOMMENDATION

Presently before the Court is the pro se Petition for Writ of Habeas Corpus filed by the Petitioner, Edwin Baez ("Petitioner"), pursuant to 28 U.S.C. section 2254.  Petitioner is incarcerated in the state correctional facility in Huntington, Pennsylvania.  For the reasons that follow, it is recommended that the Petition should be denied with prejudice and dismissed without an evidentiary hearing.

I.    **FACTS AND PROCEDURAL HISTORY**.[1]

On August 29, 1995, at approximately 8:00 p.m., Luis Cruz ("Cruz"), the boyfriend of Petitioner's estranged common law wife, Olga Toledo ("Toledo"), drove Toledo to her mother's house to meet Petitioner and pick up the three children born to Toledo and Petitioner.  Previously, Petitioner threatened to kill any

_____

[1]This information is taken from the Petition, the Response, and the documents attached thereto.

man whom he saw with Toledo, and when he saw Cruz and Toledo in the van together he said to the victim, "What are you doing with my woman?"  Toledo exited the van, and Petitioner walked to the driver's side of the van where Cruz sat, pulled out a chrome colored gun, hit Cruz in the head with the gun, then put it to Cruz's chest and fired.  The bullet pierced several vital organs and killed Cruz.  (N.T., 1/7/98, pp. 41-43, 73-74, 94-96.)

On January 8, 1998, a jury sitting before the Honorable Gary S. Glazer found Petitioner guilty of first-degree murder and possessing an instrument of crime.  The following day, Judge Glazer sentenced Petitioner to a term of life imprisonment. Petitioner filed a direct appeal in the Pennsylvania Superior Court, which was dismissed for failure to file a brief.  After reinstatement of his direct appeal rights nunc pro tunc through a successful petition pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa. C.S.A. § 9541 et seq., Petitioner's case again came before the Superior Court.  In his nunc pro tunc direct appeal, petitioner claimed that the evidence was insufficient to support his first degree murder conviction and that trial counsel had been ineffective for failing to object to evidence of Petitioner's prior threatening behavior.  The Superior Court affirmed Petitioner's judgments of sentence on September 7, 2000. Commonwealth v. Baez, 759 A.2d 936 (Pa. Super. 2000). Petitioner's petition for allowance of appeal was denied by the

Pennsylvania Supreme Court on March 8, 2001.  Commonwealth v. Baez, 775 A.2d 800 (Pa. 2001)(Table).  Petitioner did not seek certiorari in the United States Supreme Court.

On May 1, 2001, Petitioner filed a second pro se PCRA petition.  Counsel was appointed, and filed an amended petition on petitioner's behalf claiming that trial counsel was ineffective for failing to present a diminished capacity defense, and that appellate counsel was ineffective for failing to raise the trial counsel ineffectiveness claim on direct appeal.  On July 31, 2002, Judge Glazer, acting as the PCRA court, dismissed the petition as meritless.  The Superior Court affirmed the dismissal of the PCRA petition on April 12, 2006.  Resp., Ex. A; Commonwealth v. Baez, 902 A.2d 972 (Pa. Super. 2006)(Table).  The Pennsylvania Supreme Court denied the petition for allowance of appeal on August 24, 2006.  Commonwealth v. Baez, 906 A.2d 537 (Pa. 2006)(Table).

On December 22, 2006, Petitioner filed the instant habeas petition, alleging that: 1) the evidence was insufficient to support his first degree murder conviction; 2) trial counsel was ineffective for failing to object to prior bad acts evidence; and 3) trial counsel was ineffective for failing to present a diminished capacity defense to the jury.  Pet., p. 9.  On February 13, 2007, the Honorable Edmund V. Ludwig referred this case for preparation of a Report and Recommendation ("R&R") to

the Honorable Arnold C. Rapoport.  On April 6, 2007, the referral order was vacated, and this case was instead referred to the undersigned to prepare a R&R.  The Response was filed on June 26, 2007.  Respondents contend that Petitioner's claims were properly rejected by the state courts as meritless and no relief is due to Petitioner.

## II.    **DISCUSSION**.

### I.    **WHETHER THE EVIDENCE WAS SUFFICIENT TO SUPPORT PETITIONER'S FIRST DEGREE MURDER CONVICTION.**

Petitioner's first claim is that the evidence presented at trial was insufficient to support his first-degree murder conviction.  Petitioner contends that the prosecution failed to prove that he possessed the requisite specific intent to kill Cruz when Petitioner shot Cruz in the chest at close range.  Pet. at 9.  Petitioner exhausted this claim in his direct appeal before the Pennsylvania Superior Court, therefore it is properly before this Court on habeas review.  As the Respondents note, Jackson v. Virginia, 443 U.S. 307 (1979), set the standard for a due process claim based on sufficiency of the evidence.  Pursuant to Jackson, a habeas petitioner alleging that evidence is insufficient to support a conviction must persuade the Court that the evidence, viewed in a light most favorable to the prosecution, could not move a rational trier of fact to find guilt beyond a reasonable doubt.  Id. at 319, 324.  Review of the evidence must be based upon state law; that is, the ultimate

4

question is whether the prosecution provided evidence to support the substantive elements of the offense as defined by state law. Id. at 324 n.16.  Respondents note that, in order to prove first degree murder under Pennsylvania law, the prosecution had to show that Cruz was unlawfully killed, the Petitioner committed the killing, and the killing was committed with malice and the specific intent to kill.  Resp., p. 7-8 (citing 18 Pa. C.S.A. § 2502(a); Commonwealth v. Weiss, 776 A.2d 958, 963 (Pa. 2001) (citing Commonwealth v. Hall, 701 A.2d 190, 196 (Pa. 1997))). Malice and intent to kill may be inferred from use of a deadly weapon upon a vital part of the victim's body.  Id. at 8 (citing Commonwealth v. Walker, 656 A.2d 90, 95 (Pa. 1995), Commonwealth v. Overby, 836 A.2d 20, 22 (Pa. 2003), and Commonwealth v. Lee, 585 A.2d 1084, 1088 (Pa. Super. 1991)).

Here, the Pennsylvania Superior Court's determination that the evidence adduced at trial was sufficient to support the first-degree murder conviction was in no way contrary to, or an unreasonable application of the Jackson standard.  In reviewing this claim, the Superior Court stated the following:

Although Appellant argues that the evidence does not support a deliberate, premeditated murder, the Supreme Court has found that the intent to kill may be formulated in seconds:

Our cases have consistently held that the requirement of premeditation and deliberation is met whenever there is a conscious purpose to bring about death.  This is emphasized by those decisions which have stated that the

5

design to kill can be formulated in a
fraction of a second.  An analysis of our
decisions indicate that the courts in this
jurisdiction have determined that the
distinction between murder of the first and
second degree is the presence of a specific
intent to kill.  We can find no reason where
there is a conscious intent to bring about
death to differentiate between the degree of
culpability on the basis of the elaborateness
of the design to kill.  The heinous element
sought to be punished by the higher penalty
(a finding of murder in the first degree) is
that the accused acted intending his acts to
result in the death of another human being.

Commonwealth v. O'Searo, 352 A.2d 30, 37-38 (Pa.
1976)(citations and footnotes omitted).

In the present case, Ms. Toledo testified that, on
the evening of August 29, 1995, as she was getting her
children out of Appellant's car, she heard Appellant
arguing with Victim.  Shortly thereafter, she heard a
shot and saw Appellant, with gun in hand, get into his
vehicle and leave the scene.  N.T. 1/7/98 at 41-42.

In addition, Detective Joseph Fischer of the
Philadelphia Police Department, Homicide Division,
Fugitive Squad, read into evidence portions of the
statement given to him by Appellant on the day of
Appellant's arrest.  Contained within the statement was
an admission by Appellant that he punched Victim in the
face, and then pulled out a gun and "it just went off."
Id. at 149-150.

The Commonwealth also presented the testimony [of]
Dr. Bennett Preston, Assistant Medical Examiner in
Philadelphia, who stated that Victim suffered a gunshot
wound to the left chest.  Dr. Preston noted, in
relevant part, the following:

Now on his left arm, just in front of
the elbow, there was what we call gunpowder
stippling.  This is burning gunpowder forming
abrasions in the skin.  This is consistent
with him holding his arm up.  The gun is
fired from the left, the stipple hits him in
the arm, the bullet continues into his chest.
So the range of the fire of the gun is about
a foot away from the arm when it's fired.
The bullet continues into the low chest and

it passed to the right, down and backwards.
Went through the left chest, went through the
left lung in the diaphragm, the stomach, the
aorta, the esophagus, the liver, the right
lung and it came out his right back under the
armpit.

*Id.* at 73-74.
    The above evidence presented by the Commonwealth
belies Appellant's allegation that the evidence was
insufficient to sustain his conviction for first degree
murder.  The evidence reveals that Appellant used
deadly force, at close range, on a vital part of
Victim's body, causing his death.  *See Clark*, 551 Pa.
at 265, 710 A.2d at 34; *Commonwealth v. Williams*, 537
Pa. 1, 640 A.2d 1251 (1994).
    We note that, although Appellant argues that when
he pulled the gun on Victim he was fearful that Victim
was about to shoot him, and that the gun "just went
off," it is for the factfinder to make credibility
determinations, and the finder of fact may believe all,
part, or none of a witness's testimony.  *Commonwealth
v. Griscavage*, 512 Pa. 540, 517 A.2d 1256 (1986).  In
this case, the jury was free to accept the
Commonwealth's version of the events in question,
including the testimony of Dr. Preston, who testified
that the findings on Victim's body were consistent with
him holding his arm up in response to Appellant
producing a gun.  As such, we find that the evidence,
viewed in the light most favorable to the Commonwealth
as the verdict winner, was sufficient to sustain
Appellant's conviction for first degree murder.

Commonwealth v. Baez, 759 A.2d 936, 938-939 (Pa. Super. 2000).

Under AEDPA, review for sufficiency of the evidence means a

determination whether the state court disposition was an

objectively unreasonable application of the Jackson standard.

See Williams, 529 U.S. at 379-390.  The Superior Court's

rejection of Petitioner's sufficiency claim was not objectively

unreasonable under Jackson because reviewing the evidence in the

light most favorable to the prosecution, any rational trier of

fact could have found proof of guilt beyond a reasonable doubt.
Because those rejections, pursuant to Pennsylvania law, were
neither contrary to nor an unreasonable application of clearly
established federal law, Petitioner cannot be granted relief via
habeas review.  28 U.S.C. § 2254(d).  This claim must be denied.

**II.     WHETHER PETITIONER'S CLAIM THAT TRIAL COUNSEL WAS
INEFFECTIVE FOR FAILING TO OBJECT TO TESTIMONY
CONCERNING PREVIOUS THREATS MADE BY PETITIONER.**

Petitioner's second claim is that trial counsel was
ineffective for failing to object to "prior bad acts hearsay
testimony," thereby "failing to prevent [its] admission ..."
Pet. at 9.  The alleged hearsay testimony is that of witnesses
Judy Hernandez and Homicide Detective Dominic Mangoni, concerning
a statement Ms. Hernandez gave to police.  During trial, Ms.
Hernandez tried to recant her statement, and was impeached with
the signed statement.  See Commonwealth v. Baez, 759 A.2d 936,
939-40 (Pa. Super. 2000).

The guiding federal case on ineffective assistance of
counsel claims is Strickland v. Washington, 466 U.S. 668 (1984).
As Respondents note, "[t]his same standard for ineffectiveness is
used by the Pennsylvania courts in assessing ineffective
assistance of counsel under the Pennsylvania constitution."  See
Resp., p. 14 (citing Werts v. Vaughn, 228 F.3d 178, 203 (3d. Cir.
2000); Commonwealth v. Pierce, 527 A.2d 973, 976 (Pa. 1987)
(expressly stating that Pennsylvania follows the Strickland

standard of review)).  Because the state court has essentially applied Strickland to this case, this Court must be "doubly deferential" in its habeas review.  Id. (citing Yarborough v. Gentry, 540 U.S. 1, 6 (2003)(stating review of effectiveness of trial counsel's summation is "doubly deferential when it is conducted through the lens of federal habeas")).  See also Williams v. Taylor, 529 U.S. 362 (2000)(employing the AEDPA standard of review to an ineffectiveness claim which had previously been rejected by a state court).

Per Strickland, a claim of ineffectiveness has two components.  First, the defendant must show that counsel's performance was deficient.  466 U.S. at 687.  This requires showing that counsel made errors so serious that counsel was not functioning as "counsel" guaranteed the defendant by the Sixth Amendment.  Id.  Second, the defendant must show that the deficient performance prejudiced the defense.  Id.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.  Id. at 687.  Unless a petitioner makes both showings, it cannot be said that the conviction resulted from a breakdown in the adversary process that renders the result unreliable. Consequently, only the "rare claim" of ineffectiveness should succeed.  Buehl v. Vaughn, 166 F.3d 163, 169 (3d Cir.), cert. denied, 527 U.S. 1050 (1999)(quoting United States v. Gray, 878 F.2d 702, 711 (3d. Cir. 1989)).  In addition, even if trial

9

counsel is found to have satisfied the <u>Strickland</u> standard by
performing deficiently and prejudicing the defense, a habeas
corpus petition fails unless the petitioner can show that the
state court's resolution of his ineffectiveness claim is an
objectively unreasonable application of the highly demanding
<u>Strickland</u> standard.  28 U.S.C. § 2254(d)(1); <u>Woodford v.
Visciotti</u>, 537 U.S. 19, 24-25 (2002).

  Petitioner exhausted this claim in state court on
direct review.  The Superior Court rejected this claim:

  Appellant's ineffectiveness claim is based on
counsel's failure to object when Commonwealth witness
Judy Hernandez, who had become an uncooperative and
hostile witness, was shown the signed statement she had
given Homicide Detective Dominic Mangoni on August 30,
1995, and Commonwealth counsel proceeded to read
verbatim a question and response from that statement.
*See* Trial Court Opinion filed 12/10/99 at 6.  Appellant
further contends that counsel, again, failed to object
when, during direct examination of Detective Mangoni,
he read the same questionable portion of Ms.
Hernandez's statement into evidence as follows:

  'Question [Detective Mangoni]: Do you know
why Twenty [Appellant] wanted to shoot
[Victim] Luis?'

  Response [Ms. Hernandez][:] 'Twenty
[Appellant] was Olga's husband and the father
of their children.  He was separated from her
for two years.  He told her that if he saw
her with anyone else he would kill the guy.
Three months ago he threatened another guy
that Olga was seeing.  He had a gun then,
too.  I think that she reported it to the
police.'

N.T., 1/7/98, 123.

  During the testimony of Ms. Hernandez, she denied
making the above statements to Detective Mangoni. *Id.*
at 95-96.  Therefore, the written statement signed and

adopted by Ms. Hernandez, *Id.* at 92-93, was admissible
for impeachment and as substantive evidence. *See
Commonwealth v. Lively*, 530 Pa. 464, 610 A.2d 7 (1992).
In addition, the above statements evidencing
Appellant's threat of violence were relevant to his
malicious and deliberate state of mind at the time of
the murder. *See Griffin*, 684 A.2d at 594; *See also
Commonwealth v. Schwartz*, 419 Pa. Super. 251, 615 A.2d
350 (1992).

However, assuming, *arguendo*, that portions of Ms.
Hernandez's statement were hearsay and that it was
erroneous for trial counsel to not have objected to the
reading of such, Appellant has failed to prove that he
was prejudiced by this testimony, that is, but for the
omission in question, the outcome of the proceeding
would have been different. *Ellis*, 541 Pa. At 293, 662
A.2d at 1047.  Thus, Appellant's ineffective assistance
of counsel claim predicated on counsel's failure to
object to the evidence in question is without merit.

Commonwealth v. Baez, 759 A.2d 936, 940 (Pa. Super. 2000)

(footnotes omitted).  The state court's conclusion that

Petitioner's ineffectiveness claim was meritless was neither

contrary to, nor an unreasonable application of, the federal

ineffectiveness standard as set forth in Strickland.

Petitioner cannot show that counsel's performance was

deficient.  Strickland, 466 U.S. at 687.  This requires showing

that counsel made errors so serious that counsel was not

functioning as "counsel" guaranteed Petitioner by the Sixth

Amendment.  Id.  As the Superior Court recognized, because Ms.

Hernandez denied making the statement to Detective Mangoni (N.T.

1/7/98, pp. 95-96), the written statement which she previously

signed and adopted (id. at 92-93) was admissible both for

impeachment and as substantive evidence because it tended to

prove Petitioner's malice, jealous motive, and specific intent to

11

kill Cruz.  Counsel's failure to object cannot be called an error "so serious that counsel was not functioning as 'counsel' guaranteed . . . by the Sixth Amendment."  Strickland, 466 U.S. at 687.

Petitioner also cannot meet the prejudice prong of the ineffectiveness analysis because even if Ms. Hernandez's prior inconsistent statement had not been admitted into evidence, Petitioner's statement to police, the two eyewitness accounts of the shooting, Petitioner's flight, and Petitioner's motive was overwhelming evidence against Petitioner such that counsel's failure to object to the statement cannot be said to have changed the outcome of Petitioner's trial.  Id. at 694-695.  The Superior Court's decision was not unreasonable, and Petitioner's ineffective assistance of counsel claim for failure to object to previous threats made by Petitioner must be denied.

III.    **WHETHER PETITIONER'S CLAIM THAT TRIAL COUNSEL WAS INEFFECTIVE FOR FAILING TO PRESENT A DIMINISHED CAPACITY DEFENSE IS MERITLESS.**

Petitioner's final claim is that trial counsel was ineffective for failing to present a diminished capacity defense to the jury.  Pet. at 9.  Petitioner exhausted this claim in the state court.  The Superior Court stated in its decision that:

> Baez filed a timely *pro se* PCRA petition and the
> PCRA court appointed counsel.  Counsel filed an amended
> petition, which the PCRA court dismissed, concluding
> the issue was waived because it was not raised on
> direct appeal.  In the amended PCRA petition, however,
> appointed counsel alleged that trial counsel was
> ineffective for failing to pursue a diminished capacity

12

defense and that direct appeal counsel was ineffective for failing to raise this issue on direct appeal.  The claim, therefore, is preserved for review.  *See Commonwealth v. McGill*, 832 A.2d 1014, 1021-23 (Pa. 2003)(describing what the PCRA requires appellants to plead and prove to establish "layered ineffectiveness" of counsel).

In *McGill*, the Pennsylvania Supreme Court clarified the procedure to be followed in preserving and proving a PCRA claim challenging the effectiveness of all prior counsel in addition to immediate appellate counsel: "[I]n order for a petitioner to properly raise and prevail on a layered ineffectiveness claim, sufficient to warrant relief, he must plead, present, and prove" the ineffectiveness of direct appellate counsel, which necessarily related back to the actions of trial counsel.  *Id.* (Emphasis in original).  Thus, as with all claims of ineffectiveness, the petitioner must establish that: (1) the underlying claim has arguable merit; (2) counsel whose effectiveness is being challenged did not have a reasonable basis for his or her actions or failure to act; and (3) the petitioner suffered prejudice as a result of that counsel's deficient performance.  *Commonwealth v. Pierce*, 527 A.2d 973, 975 (Pa. 1987).  *See McGill*, 832 A.2d at 1022; *see also Commonwealth v. Washington*, 880 A.2d 536 (Pa. 2005)(petitioner is required to demonstrate the ineffectiveness of trial counsel before the question of appellate counsel's ineffectiveness can be addressed).  The focus of the analysis in a layered claim, then, is on the ineffectiveness of trial counsel.  *McGill*, 832 A.2d at 1022.

Here, Baez alleges that trial counsel was ineffective for failing to present the defense of diminished capacity in light of the fact that he told police that he had "drunk some beers" earlier that day.  As the PCRA points out, however, the defense presented at trial was self-defense.  Trial counsel presented evidence that the victim was seated in the driver's seat of a van, that Baez approached the victim, and that the two argued.  According to the evidence presented by the defense, the victim leaned over in his seat and Baez believed the victim was reaching for his weapon.  Baez claimed that he then pulled out his gun and it went off.  In his statement to police, Baez said he had "drunk a few beers" early in the day; the shooting occurred at approximately 8:00 p.m.  In his statement, Baez clearly recounted the details of the

day and the details of the crime: He stated:

> That day I went out early in the morning
> with my brother, Sammy, he is really my
> cousin.  So we was drinking in a little store
> that they got in the neighborhood.  All of a
> sudden I decided to pick up my kids. . . I
> went to pick up the kids in the park, Hunting
> Park.  Then I took the kids to eat.  We went
> to McDonald's on Lehigh Avenue.  So after
> that, I took the kids back to their mother's
> house.  First I went to the park to take the
> kids to their mother Olga.  She wasn't at the
> park so that's when I went to Darien Street
> where Olga's mother lives.  When I got there,
> Olga wasn't there.  When I asked Olga's
> mother, her name is Santa, I asked her where
> Olga was, she said that Olga wasn't there.
> At the same time I looked down the street and
> I saw Olga getting out of a van.  Then I gave
> Olga the kids and I asked her what were you
> doing with him in the van?  I was pissed off,
> I had liquor in me.  So then I walked around
> to him, he was sitting in the driver's seat
> and I swung on him.  I punched him in the
> face, I think it was, and I said to him, "I
> told you I don't want to see you with her."
> Then he like leaned down like we [sic] was
> going to grab something so I got scared and I
> pulled the gun out.  So he like pulling me
> [sic] and it just went off.

Baez fled the scene and was apprehended over one year
later.

It was counsel's strategy to present the defense
of self-defense for a complete acquittal.  We agree
with the PCRA court's analysis that this strategy was
eminently reasonable in light of the facts presented.
Further, the defense of diminished capacity would have
been contradictory to the claim that Baez was justified
in shooting the victim in self-defense.  A defense of
diminished capacity is only available to a defendant
who admits criminal liability but contests the degree
of guilt.  *See Commonwealth v. Laird*, 726 A.2d 346 (Pa.
1999)*; see also Commonwealth v. Breakiron*, 571 A.2d
1035, 1041 (Pa. 1990)(evidence of involuntary
intoxication may be used to reduce murder from a higher
degree to a lower degree but to do so appellant must
prove he was overwhelmed to the point of losing his

14

faculties and sensibilities).

    We conclude, therefore, that Baez has failed to establish that trial counsel did not have a reasonable basis for failing to present evidence of diminished capacity.  His claim of appellate counsel's ineffectiveness, then, must also fail.  *See McGill*, *supra* (if a petitioner fails to develop any of the three *Pierce* prongs regarding the underlying issue of trial counsel ineffectiveness, he or she will have failed to advance the arguable merit prong of the claim of appellate counsel's ineffectiveness); *cf. Commonwealth v. Lambert*, 568 Pa. 346, 797 A.2d 232, 244 (2001)("Claims involving appellate counsel ineffectiveness. . . involve concerns unique to appellate practice.  Arguably meritorious claims may be omitted in favor of pursuing claims which, in the exercise of appellate counsel's objectively reasonable professional judgment, offer a greater prospect of securing relief.")

Resp., Ex. A, pp. 2-5.  A diminished capacity defense due to voluntary intoxication requires a defendant to demonstrate that the "use of intoxicants overwhelmed or overpowered him to the point of losing control over his faculties," making him incapable of forming the specific intent to kill.  <u>Commonwealth v. Serge</u>, 837 A.2d 1255, 1266 n.10 (Pa. Super. 2003); <u>Commonwealth v. Wilson</u>, 672 A.2d 293, 297 (Pa.), <u>cert.</u> <u>denied</u>, 519 U.S. 951 (1996)(citations omitted).

    There is no evidence indicating that Petitioner was intoxicated "to the point of losing his sensibilities" when he shot and killed Cruz, and Petitioner never alleged that he informed counsel that he was intoxicated.  <u>See</u> Resp., Ex. B.  The only evidence that Petitioner consumed alcohol was his statement to police that he had been drinking on the morning of the murder. Because the murder took place at approximately eight o'clock in

the evening, Respondents correctly argue that Petitioner's
ingestion of alcohol many hours before the acts in question is
not equivalent to a viable defense of intoxication.  Petitioner's
statement to police also negated any possible intoxication
theory.  Petitioner clearly recalled the murder and gave a
detailed account of the events to police.  Nothing in the record
should have led trial counsel to believe that Petitioner was not
in control of his faculties when he shot Cruz.

        Under the Strickland standard, as applied in
Pennsylvania and in the federal courts, counsel cannot be deemed
ineffective for not pursuing a meritless claim.  Commonwealth v.
Michael, 755 A.2d 1274, 1277 (Pa. 2000); Parrish v. Fulcomer, 150
F.3d 326, 328 (3d Cir. 1998)(counsel not ineffective for failing
to raise meritless claim).  Because trial counsel has broad
discretion to determine the tactics employed, a defendant is not
entitled to relief on an ineffectiveness claim if the chosen
strategy was not successful.  See Strickland, 466 U.S. at 689;
Zettlemoyer v. Fulcomer, 923 F.2d 284, 296 (3d Cir. 1991) ("A
defense counsel cannot be deemed ineffective just because he is
not successful.").  Here, counsel's trial strategy was to argue
that Petitioner acted in self-defense when he shot Cruz.  No
competent lawyer could have asserted diminished capacity or
voluntary intoxication in this case, because arguing both self-
defense and diminished capacity are mutually exclusive.  This
issue was addressed in Commonwealth v. Davenport, 431 A.2d 982

16

(Pa. 1981), where counsel did not pursue an intoxication theory that would have undercut a self-defense claim.  Failure to make these conflicting arguments to the jury cannot be deemed "outside the wide range of professionally competent assistance," as required by <u>Strickland</u>.  <u>See</u> 466 U.S. at 690.  The Superior Court's determination was not unreasonable in light of <u>Strickland</u>.  Therefore, Petitioner is not entitled to habeas relief for this ineffective assistance of counsel claim.

**IV.  Certificate of Appealability.**

Section 102 of the Antiterrorism and Effective Death Penalty Act (28 U.S.C. § 2253 (as amended)) codified standards governing the issuance of a certificate of appealability for appellate review of a district court's disposition of a habeas petition.  Amended Section 2253 provides that "[a] certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right."  Because Petitioner has not made a substantial showing of the denial of a constitutional right, a certificate of appealability should not issue.

For all of the foregoing reasons, I make the following:

17

## RECOMMENDATION

AND NOW, this 11th  day of March, 2008, IT IS RESPECTFULLY RECOMMENDED that the instant Petition for Writ of Habeas Corpus should be DENIED with prejudice and DISMISSED without an evidentiary hearing.  There is no probable cause to issue a certificate of appealability.

The Petitioner may file objections to this Report and Recommendation.  <u>See</u> Local Civ. Rule 72.1.  Failure to file timely objections may constitute a waiver of any appellate rights.


BY THE COURT:


*/s/ Henry S. Perkin*
HENRY S. PERKIN
UNITED STATES MAGISTRATE JUDGE

18